UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

KURTIS SELF

                    Plaintiff,

      v.

STATE OF OREGON by and through the
Oregon Department of Corrections; Melissa
Hughs, and Patrick Maney, NP

                   Defendants.

Case No. 2:22-cv-01016-AR

**OPINION AND ORDER**

_____

**ARMISTEAD, United States Magistrate Judge**

      Kurtis Self moves for attorneys' fees.[1] Self, an adult in custody of the Oregon

Department of Corrections (ODOC), sued defendants ODOC, Melissa Hughs, and Patrick

Maney, NP. Self's lawsuit alleged that Hughs and Maney were deliberately indifferent to his

---

[1]     The parties have consented to jurisdiction by magistrate judge as permitted by 28 U.S.C. § 636(c)(1). (Full Consent, ECF 7.) The parties request oral argument. The court, however, does not believe that oral argument would help resolve the pending motion. *See* LR 7-1(d)(1).

serious medical needs in violation of his Eighth Amendment rights, and that ODOC was negligent because the medical care he received fell below the relevant standard of care. (Compl. ¶¶ 10-23, ECF 1.) The court granted summary judgment to Maney and ODOC. (Order on MSJ, ECF 47.) After a four-day jury trial on his constitutional claim against Hughs, the jury returned a verdict for Self and awarded him noneconomic damages of $17,500. (Verdict, ECF 89.)

Following entry of the judgment, Self timely moved for attorneys' fees under 42 U.S.C. § 1988, seeking $74,055.00 in fees and $26,325.57 in expenses. (Mot. at 2, ECF 97.) Self's attorney, John Burgess, submitted a declaration with timekeeping records for himself and his legal assistant, Aden Lynch, as well as copies of relevant invoices for his expenses. (*See generally* Burgess Decl., ECF 98.) Self did not submit a separate cost bill.

Hughs does not object to an award of attorneys' fees but contends that the Prison Litigation Reform Act (PLRA), 42 U.S.C.A. § 1997e, limits any fee award. Hughs' primary argument is that, under § 1997e(d)(2), Self may recover, at most, 150 percent of his money damages. (Resp. at 1, ECF 101.) Self concedes that the PLRA controls here but argues that federal appellate courts have misread the relevant PLRA provision and that, when properly construed, his fees should not be capped and asks the court to use the traditional lodestar method to calculate fees. (Reply at 2, 12 ECF 105.) Hughs also argues for a reduction of the requested attorneys' fees because of what she sees as "substantial deficiencies in billing." (Resp. at 2.) For the reasons addressed below, Self's motion for fees is GRANTED IN PART and DENIED IN PART.

\ \ \ \ \

Page 2 – OPINION AND ORDER
*Self v. State of Oregon, et al.*, 2:22-cv-01016-AR

## LEGAL STANDARD

### A.    *42 U.S.C. § 1988*

In a civil rights lawsuit brought under 42 U.S.C. § 1983, the court may award the prevailing party reasonable attorneys' fees as part of the costs. 42 U.S.C. § 1988(b); *A.D. v. Cal. Highway Patrol*, 712 F.3d 446, 460 (9th Cir. 2013). A court's disposition of a motion for attorneys' fees must "provide a reasonably specific explanation for all aspects of a fee determination" to allow for "adequate appellate review." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 558 (2010). The preferred method of calculating reasonable attorneys' fees is the "lodestar" method. *Id.* at 551-52. This is because "the lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case," is "readily administrable," and is "objective." *Id.*

One purpose of federal fee-shifting statutes is to ensure that a prevailing plaintiff's counsel receives a fee that is "sufficient to induce a capable attorney to undertake the representation of a meritorious . . . case." *Id.* at 552. The fee-shifting provision in § 1988 is meant to safeguard civil rights plaintiffs' access to competent counsel and, in turn, ensure adequate enforcement of those rights. *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989) ("[T]he purpose of § 1988 was to make sure that competent counsel was available to civil rights plaintiffs[.]"); *Perdue,* 559 U.S. at 550 ("Congress enacted 42 U.S.C. § 1988 in order to ensure that federal rights are adequately enforced."). The lodestar method of calculating attorneys' fees "yields a fee that is presumptively sufficient to achieve this objective." *Perdue,* 559 U.S. at 552.

The lodestar amount is the product of the number of hours reasonably spent on the litigation multiplied by a reasonable hourly rate. *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009).[2] In making that calculation, the court considers various reasonableness factors, including the quality of an attorney's performance, the results obtained, the novelty and complexity of a case, and the special skill and experience of counsel. *See Perdue*, 559 U.S. at 553-54; *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1209 n.11 (9th Cir. 2013).

**B.    *PLRA***

The PLRA places restrictions on fee awards for prisoner plaintiffs who succeed on their claims. 42 U.S.C. § 1997e(d). To "reduce the quantity and improve the quality of prisoner suits," Congress introduced a variety of reforms in the PLRA intended to filter out frivolous claims and facilitate meritorious ones, including changes to the way attorneys' fees are awarded in prisoner cases. *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016).

The PLRA attorneys' fees provisions modify the lodestar in three ways. *Id.* First, the hours used to determine the fee award must be directly and reasonably incurred in proving an actual violation of the plaintiff's rights and proportional to the court-ordered relief. 42 U.S.C. § 1997e(d)(1). Second, for actions resulting in a damages award, attorneys' fees are capped at 150 percent of the monetary judgment. *Id.* § 1997e(d)(2). Third, § 1997e(d)(3) limits an attorney's

---

[2]    It is "well established that time spent in preparing fee applications" also is compensable. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1210 (9th Cir. 2013) (quoting *Anderson v. Director, OWCP*, 91 F.3d 1322, 1325 (9th Cir. 1996) (quotation marks omitted)).

hourly rate to 150 percent of the rate used for appointed counsel under the Criminal Justice Act, 18 U.S.C. §3006A (the CJA rate).

## DISCUSSION

A.    ***Attorneys' Fees***

The cap for attorneys' fees is set out in 42 U.S.C. § 1997e(d)(2), which provides that:

> Whenever a monetary judgment is awarded in an action described in paragraph (1), a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against the defendant. *If the award of attorney's fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant.*

(emphasis added). Although the Ninth Circuit has acknowledged that "the statute is not a shining exemplar of good draftsmanship," it has consistently stated that § 1997e(d)(2) caps attorneys' fees at 150 percent of a prisoner plaintiff's monetary judgment. *E.g.*, *Dannenberg v. Valadez*, 338 F.3d 1070, 1075 (9th Cir. 2003) (holding that when a prisoner plaintiff receives money damages rather than injunctive relief, § 1997e(d)(2) "caps attorneys' fees incurred for the sole purpose of securing the monetary judgment"); *Jimenez v. Franklin*, 680 F.3d 1096, 1100 (9th Cir. 2012) (where defendants were joint and severally liable, holding that § 1997e(d)(2) "limits the award, not simply the collection of the award"); *Kelly*, 822 F.3d 1085, 1100 (9th Cir. 2016) ("[I]n actions resulting in monetary judgments, the total amount of the attorney's fees award associated with the monetary judgment is limited to 150 percent of the judgment.").

Under the Ninth Circuit's understanding of § 1997e(d)(2) and with Self as the prevailing party who is entitled to reasonable attorneys' fees under § 1988, Self's attorneys' fees would be capped at 150 percent of his monetary judgment, or $26,250. Even so, Self contends that the

Ninth Circuit's interpretation of § 1997e(d)(2) is flawed because it has failed to adequately consider whether the text of § 1997e(d)(2) and the PLRA's purpose provide for the 150 percent cap of fees. Once the plain text of § 1997e(d)(2) is considered, Self argues that it merely determines what portion of an attorneys' fee award is borne by the plaintiff.

Before turning to the interpretation of § 1997e(d)(2) advanced by Self, the court describes the Ninth Circuit's consideration of that provision. In *Dannenberg*, the prisoner plaintiff was awarded by a jury $9,000 in monetary damages and obtained injunctive relief. The district court, assuming that § 1997e(d)(2) capped attorneys' fees at 150% of a monetary award, said that the cap applied when a plaintiff obtains only monetary relief. Because the award also included injunctive relief, the court concluded that subsection (d)(2) did not limit fees where a prisoner plaintiff received injunctive relief and monetary damages. 338 F.3d at 1074-75. Hence, the court awarded attorneys' fees of $57,556.25 (reflecting the lodestar amount for all the hours counsel had spent on plaintiff's case) rather than $13,500, which is what the defendants argued were available under a 150 percent cap of the awarded monetary damages. On appeal, the Ninth Circuit rejected defendants' argument, reasoning that "[w]hereas the statute provides for attorneys' fees in an amount 'proportionately related to the court-ordered relief,' 42 U.S.C. § 1997e(d)(1)(B)(i), appellants' interpretation of subsection (d) would require courts setting attorneys' fees to disregard completely a plaintiff's degree of injunctive success whenever the plaintiff also obtains money damages." *Id*. at 1074. But the court did not examine the text of § 1997e(d)(2) when it took as a given that the provision capped attorneys' fees at 150 percent for monetary judgments.

In *Jimenez*, the district court ordered four defendants jointly and severally liable for a total of $365,001 in damages for violations of the plaintiff's civil rights while in pretrial detention. 680 F.3d at 1098. The defendants appealed the judgment and the attorneys' fee award without challenging the part of the order that held them jointly and severally liable. *Id*. The Ninth Circuit affirmed, and after three of the defendants obtained satisfaction of judgment despite paying less than the full amount of the fee award based on their argument that § 1997e(d)(2) "limited each individual defendant's attorney's fee liability to 150 percent of the compensatory damages awarded against that individual," the plaintiff appealed. *Id*. at 1099. In holding that the defendants had waived that argument in the first appeal, the court vacated the district court's judgment. But like in *Dannenberg*, the Ninth Circuit never considered the validity of the 150 percent cap. 680 F.3d at 1100. And in *Kelly*, the Ninth Circuit addressed defendants' challenge to the district court's award of attorneys' fees for declaratory and injunctive relief under the PLRA (§ 1997e(d)(3)), but in doing so remarked that in "cases involving monetary judgments, the PLRA expressly limits the total amount of the attorney's fees award associated with the monetary judgment to 150 percent of the judgment." 822 F.3d at 1101.

Here, Self argues that the PLRA does not "expressly" limit attorneys' fees to 150 percent of the monetary judgment. In Self's view, when properly read, subsection (d)(2) does not impose a "rigid cap on total fees recoverable" but rather "governs how attorney fees are to be satisfied." (Mot. at 3.) Interpreting the provision otherwise, Self argues, contradicts the plain language of the statute and frustrates the purpose of the PLRA and fee-shifting statutes.

To start, Self says that § 1997e(d)(2) merely speaks to the allocation of responsibility between the plaintiff and the defendant. That is, the statute's plain language neither limits attorneys' fees to 150 percent of the monetary judgment nor prohibits the court from awarding reasonable fees above that amount—the plain language only addresses instances where attorneys' fees are *equal to or less than* 150 percent of the judgment. *See Harris v. Ricci*, 8 F. Supp. 3d 583, 593 (D.N.J. 2014), *aff'd in part, vacated in relevant part, rev'd in part*, 595 F.App'x 128 (3d Cir. 2014). In the same way it is silent when a judgment includes injunctive relief and monetary damages, § 1997e(d)(2) is silent when fees are *more than* 150 percent of the judgment.[3]

Self describes the prevailing interpretation as "insert[ing] language into [the] statute that is not there" (Mot. at 4), which flouts the established principle that the court must interpret unambiguous statutes as written and may not "ignore unambiguous language because [it] can imagine a preferable version." *Crespo v. Holder*, 631 F.3d 130, 139 (4th Cir. 2011); *see also Pit River Tribe v. Bureau of Land Mgmt.*, 939 F.3d 962, 970 (9th Cir. 2019) ("[I]t is not our practice to read words into statutory provisions[.]"); *Atl. Sounding Co. v. Townsend*, 557 U.S. 404, 424 (2009) ("[W]e will not attribute words to Congress that it has not written.").

According to Self, the current interpretation also fails to avoid absurd results, violating another established canon of statutory construction. Under the Ninth Circuit's interpretation, a

---

[3]    In a dissent to *Thompson v. Smith*, 805 Fed App'x 893, 912 (11th Cir. 2020), Circuit Judge Beverly Martin observed that "while § 1997e(d)(2) sets out what happens if the award of attorney's fees is not greater than 150% of the judgment, the statute is silent as to awards that are greater than 150% of the judgment. Yet the majority opinion breathes meaning into § 1997e(d)(2)'s silence. That is something we—as judges—may not do. We are confined to the meaning of the plain text of § 1997e(d)(2), which by its terms imposes no absolute cap on the award of reasonable attorney's fees." (citation omitted).

prevailing adult in custody who receives an injunction would recover all their attorneys' fees, while a prevailing adult in custody who receives damages will be restricted in the amount of fees they can recover. Self says such an arbitrary distinction is absurd—the form of relief should not determine whether a prevailing prisoner can recover all their attorneys' fees from defendants.

To that end, Self contends that logic requires the two sentences in § 1997e(d)(2) to be read together—that failing to read the last sentence in the context of the first sentence is misguided. The first sentence requires a prevailing plaintiff to apply up to 25 percent of their monetary damages to their attorneys' fees. As Self explains, the last sentence is a necessary clarification because, if the fee award is greater than 150 percent of the judgment, a prevailing plaintiff's 25 percent "would *never* cover the remainder of plaintiff's attorney fees." (Mot. at 6 (emphasis in original).) By contrast, if attorneys' fees are less than 150 percent of the judgment, it is possible that plaintiff's portion could cover the entirety of the fee award. In a recent law review article cited by Self, the author argues that subsection (d)(2)'s last sentence serves as a "reminder" to defendants that they are liable for the outstanding amount over the plaintiff's 25 percent. *See* Eleanor Umphres, *150% Wrong: The Prison Litigation Reform Act and Attorney's Fees*, 56 Am. Crim. L. Rev. 261, 269-280 (2019).

Finally, Self argues that if the PLRA's stated goal is to deter frivolous lawsuits, the fee cap does just the opposite by penalizing competent attorneys who work tirelessly to vindicate a prisoner's constitutional rights and ultimately prevail. As Self explains, "a lawsuit where the plaintiff won is by definition not a frivolous lawsuit." (Mot. at 8.) In the example above where both plaintiffs prevailed but received different relief, neither suit is frivolous. But only the

prisoner who received injunctive relief could recover all their fees. According to Self, nothing in the legislative history suggests Congress contemplated that result.

Nor does the legislative history suggest that Congress intended to do away with the established practice of awarding reasonable fees to prevailing civil rights plaintiffs, Self adds. Unlike other provisions that were discussed at length in committee and on the floor, the language at issue "was added late in the legislative process and was not subjected to substantial debate or analysis." (Mot. at 9.) Congress was largely concerned with ensuring fees were "reasonable and tied to the success of the litigation." (*Id.*) As Self explains, fee-shifting statutes are meant to ensure that a plaintiff's financial resources do not hinder them from enforcing their constitutional rights. Capping fees at 150 percent of a monetary judgment, Self argues, frustrates that purpose. Without the prospect of a reasonable fee award, many civil rights suits would never be litigated; that is especially true for prisoner cases, where damages are often modest.

Yet whatever merit Self's arguments may have, the court is bound by Ninth Circuit precedent and must cap attorneys' fees at $26,250, or 150 percent of Self's damages award. Even if Self is correct that the court's statements concerning the cap are unexamined, they are unequivocal: "In cases involving monetary judgments, the PLRA expressly limits the total amount of the attorney's fees award associated with the monetary judgment to 150 percent of the judgment." *Kelly*, 822 F.3d at 1101. The court denies his request to not cap his attorneys' fees at 150 percent. Self must take his arguments to the Ninth Circuit on appeal.

But the court disagrees with Hughs that Self's fee award should be capped and *then* reduced for any alleged billing deficiencies. (Resp. at 2.) That approach conflicts with the

longstanding Ninth Circuit practice of calculating a reasonable fee award using the lodestar

method before making any departures from it. *Camacho v Bridgeport Fin., Inc.*, 523 F.3d 973,

978 (9th Cir. 2008) (courts "must calculate awards for attorneys' fees using the 'lodestar'

method"). The PLRA refers to § 1988 as "the governing framework" for determining fees, and

federal courts almost exclusively use the lodestar method to determine a reasonable fee award

under such fee-shifting statutes. *Kelly*, 822 F.3d at 1101; *Perdue*, 559 U.S. at 551 ("[T]he

'lodestar' figure has . . . become the guiding light of our fee-shifting jurisprudence.") (citation

modified). The court does not read the provisions in the PLRA as fully replacing the traditional

method of calculating a prevailing plaintiff's fees. *See Kelly*, 822 F.3d at 1101. Accordingly, the

court calculates the lodestar before applying the PLRA's statutory cap.[4]

### 1.    Reasonable Time

In determining the number of hours reasonably spent, "the district court should exclude

hours 'that are excessive, redundant, or otherwise unnecessary.'" *McCown*, 565 F.3d at 1102

(quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). The party seeking an award of

attorneys' fees "has the burden of submitting billing records to establish that the number of hours

it has requested [is] reasonable." *Gonzalez*, 729 F.3d at 1202. Hughs argues that the court should

---

[4]        That approach is in line with other district courts in this circuit. *See Larsgard v. Corizon Health Inc.*, CV-16-PHX-SPL, 2017 WL 11922485, at *4 (D. Ariz. Oct. 30, 2017) ("In applying the PLRA caps, the Court still begins with the traditional lodestar method (reasonable hours at a reasonable rate, subject to application of a multiplier for unincorporated factors), but applies the limitations in subsections (d)(1), (2) and (3)."); *Penton v. Johnson*, 2:11-cv-00518-DJC-KJN, 2024 WL 4755801, at *3 (E.D. Cal. Nov. 12, 2024) (applying reductions for billing practices and partial success before applying the statutory cap).

reduce Self's attorney's time on three grounds: (1) specificity in billing entries; (2) the inclusion

of time billed for clerical or secretarial tasks; and (3) partial success.

*Specificity*. Courts in this district caution against block-billing and providing vague or

otherwise inadequate descriptions of tasks because these practices hinder a court's ability to

assess the reasonableness of the time spent. *See, e.g.*, U.S. District Court, District of Oregon,

Message from the Court Regarding Attorney Fee Petitions, *available at*

https://ord.uscourts.gov/index.php/rules-orders-and-notices/notices/fee-petitions (last updated

Mar. 2, 2017).

Hughs asks for an unspecified "across the board" reduction to the fee award because the

fee petition lacks sufficient specificity and cannot adequately be assessed for reasonableness. In

her view, the time entries pertaining to phone calls are too vague. (Resp. at 6.) But a review of

the record reveals otherwise. Most time entries for phone calls (and emails) include enough

description for the court to determine the reasonableness of the time spent. (*See* Burgess Decl.,

Ex. 2.) "Counsel 'is not required to record in great detail how each minute of his time was

expended,' but should 'identify the general subject matter of his [or her] time expenditures.'"

*Fischer v. SJB-P.D.*, 214 F.3d 1115, 1121 (9th Cir. 2000) (quoting *Hensley*, 461 U.S. at 437). The

only entries lacking a description are a select few with Self's expert and witnesses. (Burgess

Decl., Ex. 2 at 2, 4.) In those instances, the court can reasonably infer the subject of the phone

call. The court declines to reduce counsel's fees on specificity grounds.

Hughs also objects to the requested fees for Lynch. In Hughs' view, Lynch's trial billings

are not compensable because "her role as an assistant or paralegal remains unclear due to the

Page 12 – OPINION AND ORDER
*Self v. State of Oregon, et al.*, 2:22-cv-01016-AR

complete lack of task description" in her time entries. (Resp. at 6.) Lynch's billings simply

include "trial" as a description, but the court is unpersuaded that merits a reduction in fees.

(Burgess Decl., Ex. 2 at 5.) Burgess's declaration makes clear that Lynch is his legal assistant.

(Burgess Decl. ¶ 15.) The court observed at trial that Lynch contributed in a meaningful way.

Accordingly, the court finds Lynch's 27.5 hours for the four-day trial reasonable here. *See*

*Donastorg v. City of Ontario*, EDCV 18-992 JGB, 2021 WL 6103545, at *10 (C.D. Cal. Sept. 23,

2021) (declining to exclude block-billed entries for "trial" and "trial preparation" because the

overall hours expended were reasonable).

      *Clerical.* Hughs requests that the court exclude time billed for clerical tasks. (Resp. at 7.)

Clerical and secretarial tasks are considered overhead expenses and are therefore not

compensable as attorneys' fees. *Strugari v. Sagamore Ins. Co.*, 3:20-cv-00956-SB, 2023 WL

3002442, at *11 (D. Or. April 19, 2023); *see Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir.

2009) ("filing, transcript, and document organization time was clerical in nature and should have

been subsumed in firm overhead rather than billed at paralegal rates"). Courts consider tasks

such as "reviewing Court-generated notices, notifying clients of court hearings, filing documents

with the Court, communication with court staff, scheduling, and corresponding regarding

deadlines" to be clerical in nature. *Robinson v. Plourde,* 717 F.Supp.2d 1092, 1099 (D. Haw.

2010). Hughs correctly identifies several time entries in which Self's counsel reviewed emails

from the court or coordinated with defendants on scheduling and deadlines. Those clerical entries

total 1.5 hours and are excluded from the lodestar amount.

*Partial Success.* Hughs argues that a reduction of Self's fee award is proper because he prevailed on only one of his three original claims. She asks the court exclude time billed for deposing Maney, as well as reduce by half certain time entries billed before defendants' motion for summary judgment. (Resp. at 7.) Self maintains that he would have deposed Maney regardless of whether he brought a claim against him because Maney "was a fact witness" and his deposition testimony "was relevant to the claim against [] Hughs." (Reply at 22.) Self did not bill for time spent responding to defendants' summary judgment motion.

In a typical § 1983 case, the court applies a two-step test for determining a reasonable fee award where a plaintiff achieved partial success. *See Hensley*, 461 U.S. at 434-40; *Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir. 2003). First, the court considers whether a plaintiff "fail[ed] to prevail on claims that were unrelated to the claims on which he succeeded." *McCown,* 565 F.3d at 1103. If a plaintiff presents "different claims for relief that 'involve a common core of facts' or are based on 'related legal theories,' the court should not attempt to disentangle the request for attorney fees." *Hensley*, 461 U.S. at 435. Instead, the court should continue to the second step and "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *McCown,* 565 F.3d at 1103.

The PLRA holds prisoner plaintiffs to a different standard. The Ninth Circuit recently addressed how the PLRA bears on partial success in § 1983 prisoner suits in *Edmo v. Corizon, Inc.,* 97 F.4th 1165 (9th Cir. 2024). *Edmo* held that, while *Hensley* still controls in most § 1983 cases, the PLRA "displaced *Hensley* in actions brought by prisoners." 97 F.4th at 1169. Because the PLRA limits awards to fees "directly and reasonably incurred in proving an actual violation

of the plaintiff's rights," time spent on unsuccessful claims "must be excluded from the lodestar calculation." *Id.* (simplified). "Unlike *Hensley*, the PLRA excludes unsuccessful claims even if they are based on related legal theories or share a 'common core of facts' with a successful claim." *Id.* at 1169-70.

Under *Edmo*, Self cannot recover fees for time spent litigating unsuccessful claims, even if he achieved excellent results. As noted above, Self already excluded billings related to answering defendants' summary judgment motion. The court will exclude the time spent deposing Maney, but because Self's claims share a "common core of facts," disentangling the remaining time entries to determine which entries pertain to which claims is not feasible. Rather than identifying and excluding specific hours, the court applies to these billings a percentage reduction based on a "reasonable estimate of the time spent on unsuccessful claims or dismissed parties." *Id.* at 1170 n. 2.

Hughs requests that the court reduce by half the time Self's counsel spent drafting the complaint, communicating with experts, and preparing for depositions before defendants moved for partial summary judgment. After a 50 percent reduction, those billings total 2.8 hours. Together with the 1.2 hours billed for the Maney deposition, the court attributes 4.6 hours to the pursuit of unsuccessful claims and excludes them from the lodestar amount.

## 2. Reasonable Rate

After determining the number of hours reasonably spent, the court then calculates the reasonable hourly rates for the attorneys, paralegals, and legal assistants whose work comprise the reasonable number of hours. That calculation yields the lodestar amount. The PLRA limits

Page 15 – OPINION AND ORDER
*Self v. State of Oregon, et al.*, 2:22-cv-01016-AR

the hourly rate to 150 percent of the CJA rate (the PLRA rate). 42 U.S.C. § 1997e(d)(3). The PLRA rate "virtually always replaces the prevailing market rate . . . because actual prevailing rates are very unlikely to be as low as the PLRA rate." *Kelly*, 822 F.3d at 1103.

Hughs suggests that the PLRA rate should be adjusted based on when the work was performed—Burgess should be compensated at the 2020 PLRA rate for work completed in 2020, at the 2021 PLRA rate for work completed in 2021, and so on. (Resp. at 4.) Hughs lacks argument or authority to support her position, and the court is thus unpersuaded.

Attorneys' fees are typically set based on the rate in effect at the time the award was sought, rather than when the fees were incurred. *See Missouri v. Jenkins*, 491 U.S. 274, 284 (1989) ("[A]n appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly rates or otherwise—is within the contemplation of [§ 1988]."). Complex civil rights litigation may span years and the court's discretionary adjustment to the current rate can account for that delay. *Gates v. Deukmejian*, 987 F.2d 1392, 1406 (9th Cir. 1992). No part of the text of 1997e(d)(3) suggests that the reasoning of *Jenkins* should not apply. Consequently, most courts in this circuit have awarded fees at the then-current PLRA rate. *See Mitchell v. Chavez*, 1:13-cv-01324-DAD-EPG, 2018 WL 3218364, at *6 (June 29, 2018) (collecting cases); *Graves v. Penzone*, CV-77-00479-PHX-NVM, 2020 WL 1984022, at * 7 (D. Ariz. Apr. 27, 2020) (same). This court finds their reasoning persuasive. An award calculated using the 2025 PLRA rate is reasonable considering counsel has waited nearly three years to be compensated.

Burgess requests a billable rate of $600 per hour. (Mot. at 6.) As required by the PLRA, Burgess's hourly rate must be capped at $262.50/hour, which is 150 percent of the 2025 rate authorized by Judicial Conference for payment of court-appointed counsel.[5] At a rate of $262.50/hour for 110.45 hours, Self has proven he is entitled to $28,993.13 for attorney work.

Burgess also requests an hourly rate of $150 for Lynch. (Mot. at 8, ECF 105.) The PLRA does not address paralegal or legal assistant fees but legal assistant fees generally are considered compensable. *See Anderson v. Ross Island Sand & Gravel Co.*, 3:18-cv-00549-SB, 2018 WL 3947018, at *5 (D. Or. July 11, 2018) (disallowing, on default judgment, fees for clerical work by legal assistant, otherwise allowing fees for legal assistant work), *findings and recommendation adopted by* 2018 WL 3946531 (Aug. 15). Self did not include a declaration attesting to Lynch's experience, degree, or certificates or provide any information about the prevailing market rate for legal assistants in the Portland area. Other courts in this district have approved, where information is lacking, hourly rates of $75 for legal assistant work. *See Poticny v. Movers and Packers Relocation Specialists LLC*, 2022 WL 18024218, at *9 (D. Or. Dec. 30, 2022) (collecting cases in which the court awarded anywhere from $50 to $95 for work done by legal assistants). This court finds likewise—an hourly rate of $75/hour is appropriate given the lack of information about market rates and Lynch's qualifications and experience. Lynch billed 27.5 hours at $75/hour, yielding an award of $2,062.50 for legal assistant work.

---

[5]     *See* Guide to Judiciary Policy, Vol. 7 Defender Services, Part A Guidelines for Administering the CJA and Related Statutes, Chapter 2: Appointment and Payment of Counsel, § 230.16, https://www.uscourts.gov/administration-policies/judiciary-policies/guidelines-administering-cja-and-related-statutes-6#a230_16.

### 3.    PLRA's 150 Percent Cap

Between the billings of Burgess and Lynch, Self has shown he is entitled to a reasonable fee award of $31,055.63. That amount exceeds the 150 percent cap imposed by § 1997e(d)(2). The court will instead award $26,250 in attorneys' fees, or 150 percent of Self's monetary judgment.

Under the PLRA, Self is liable for a portion of his fee award. Section § 1997e(d)(3) requires a prisoner plaintiff to put up to 25 percent of his monetary judgment towards payment of attorneys' fees. *Murphy v. Smith*, 583 U.S. 220, 785 (2018) ("district courts must apply as much of the judgment as necessary, up to 25%, to satisfy an award of attorney's fees"). Self is responsible for $4,375, or 25 percent of his $17,500 judgment. Hughs is responsible for the remaining fees— $21,875.

### B.    *Litigation Expenses*

Self requests $26,325.57 in related litigation expenses. Hughs does not object to any of Self's requested expenses. Instead, she asserts in a footnote that, because Self did not file a separate cost bill, he is "explicitly seeking costs and expenses as part of his attorney fees under § 1988." (Resp. at 1 n.1.) The court rejects that characterization of Self's motion. Section 1988 provides that a prevailing party may recover "reasonable out-of-pocket expenses that 'would normally be charged to a fee paying client.'" *Woods v. Carey*, 722 F.3d 1177, 1180 n.1 (9th Cir. 2013) (quoting *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)). The plain language of the PLRA does not speak to costs or expenses, only fees. Without any restrictions in the PLRA or

specific objections asserted by Hughs, only reasonableness remains. Finding the requested expenses reasonable, Self's request for $26,325.57 in litigation expenses is granted.

## CONCLUSION

For the above reasons, Self's motion for attorneys' fees (ECF 97) is GRANTED IN PART and DENIED IN PART. Self is awarded $26,250 in attorneys' fees and $26,325.57 in litigation expenses. $4,375 of the fee award must be satisfied by Self's monetary judgment. Hughs is responsible for the remaining $48,200.57.

DATED: November 12, 2025.

_____
JEFF ARMISTEAD
United States Magistrate Judge

Page 19 – OPINION AND ORDER
*Self v. State of Oregon, et al.*, 2:22-cv-01016-AR